# U.S. BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **In re:** | In Chapter 11 proceedings |
| | Case No.: 2:10-bk-23048-DPC |
| **TWO BROTHERS XI, INC. et al,** | |
| | **ORDER DENYING APPLICATION FOR ALLOWANCE OF SUPERPRIORITY CLAIM** |
| Debtors. | |

## I. Introduction

Secured Creditor Enterprise Bank and Trust ("Enterprise") seeks allowance of superpriority administrative expense claims relating to Debtors Two Brothers V, Inc. ("TBV"), Two Brothers IX, Inc. ("TBIX"), and Two Brothers X, Inc. ("TBX") (the "Superpriority Application") (Dkt. #1366). Enterprise contends it is entitled to superpriority administrative expense claims because the adequate protection provided to it by the Debtors was insufficient to cover the actual decrease in the value of its collateral. Because Enterprise has not proven that its collateral decreased in value, the Court denies Enterprise's Superpriority Application.

## II. Background

TBV, TBIX, TBX and Two Brothers VI, Inc. ("TBVI") (collectively, the "September Debtors") operate gas stations and convenience stores. The September Debtors each filed bankruptcy under Chapter 11 on September 2, 2010 (the "Petition Date"). Enterprise holds a senior secured lien on each of the four gas stations operated by the September Debtors. TBV owns and operates a gas station located at 2635 W. Deer Valley Road, Phoenix, AZ 85027 (the "Deer Valley Property"), TBV owns and TBVI operates a gas station located at 28 Signal Butte Road, Apache Junction, AZ 5220 (the "Signal Butte Property"), TBIX owns and operates a gas station located at 3981 E. Guadalupe Road, Gilbert, AZ 85234 (the "Guadalupe Property") and TBX owns and

1

operates a gas station located at 1163 W. Broadway Road, Mesa, AZ 85210 (the "Broadway Property").

On September 16, 2010, the September Debtors each filed their bankruptcy schedules (TBV - Case no. 10-28114, Dkt. #20; TBIX - Case no. 10-28118, Dkt. #20; TBX - Case no. 10-28120, Dkt. #21) valuing each gas station as follows:

| GAS STATION | VALUE IN DEBTORS' SCHEDULES |
|---|---|
| Deer Valley Property | $575,000 |
| Signal Butte Property | $525,000 |
| Guadalupe Property | $625,000 |
| Broadway Property | $550,000 |

On September 21, 2010, the parties agreed the September Debtors would make monthly adequate protection payments to Enterprise in exchange for the continued use and possession of Enterprise's collateral (Dkt. #116). Adequate payments have been made to Enterprise in the following amounts:

| GAS STATION | TOTAL ADEQUATE PROTECTION PAYMENTS MADE |
|---|---|
| Deer Valley Property | $40,656.98 |
| Signal Butte Property | $37,106.20 |
| Guadalupe Property | $41,177.22 |
| Broadway Property | $38,562.02 |

More than six months after the Petition Date, on March 29, 2011, the Debtors filed appraisals of each gas station (Dkt. #318, 319, 320, 321). These appraisals valued the gas stations as follows:

| GAS STATION | MARCH 2011 APPRAISAL |
|---|---|
| Deer Valley Property | $1,085,000 |
| Signal Butte Property | $860,000 |
| Guadalupe Property | $1,015,000 |
| Broadway Property | $980,000 |

Thereafter, Bankruptcy Judge Case appointed examiner Peter S. Davis at the request of Enterprise and other senior secured creditors (Dkt # 577, 578). The parties stipulated that the September Debtors would segregate $23,636 for payment to the examiner (Dkt. # 630, 634). The September Debtors thereafter segregated and paid $23,636 to the examiner.

Following a plan confirmation hearing, Judge Case entered a "Memorandum Decision Re: Plan Confirmation" on January 16, 2013 (the "Confirmation Decision") (Dkt. #1416). According to the Confirmation Decision, the gas stations are now valued at the following amounts:

| GAS STATION | JANUARY 2013 DECISION |
|---|---|
| Deer Valley Property | $1,300,000 |
| Signal Butte Property | $1,100,000 |
| Guadalupe Property | $1,350,000 |
| Broadway Property | $1,250,000 |

In light of the Confirmation Decision, Enterprise contends its collateral depreciated at a rate greater than the amount of adequate protection payments it received and is, therefore, entitled to superpriority administrative expense claims in the amount of the inadequacy of its protection payments (Dkt. # 1366, 1433, 1464).

To maintain the argument that its collateral depreciated in value, Enterprise relies on the Debtors' March 2011 appraisals for initial valuations of the gas stations. However, these appraisals apply a bulk sale discount to the properties. Enterprise contends those discounts should not be applied because the Court rejected the application of the bulk sale discount as a valuation approach in its Confirmation Decision and in its earlier decision

valuing the March Debtors' collateral (Dkt. #865). Enterprise argues the gas stations should be initially valued as follows:

| GAS STATION | MARCH 2011 APPRAISAL WITHOUT BULK DISCOUNT |
|---|---|
| Deer Valley Property | $1,550,000 |
| Signal Butte Property | $1,225,000 |
| Guadalupe Property | $1,450,000 |
| Broadway Property | $1,350,000 |

The Debtors, on the other hand, argue that Enterprise is not entitled to superpriority administrative expense claims because Enterprise did not prove its collateral has declined in value. Further, the Debtors contend the adequate protection payments paid to Enterprise adequately protect Enterprise (Dkt. # 1423, 1465). To support this argument, the Debtors contend that Enterprise must provide valuations of the gas stations as of the Petition Date to determine whether its collateral declined in value and that the payments made by the September Debtors to the court-appointed examiner should be added to the total amount of adequate protection payments made to Enterprise. The Debtors also argue that Enterprise does not qualify for an administrative claim because Enterprise's claim is based on a pre-petition transaction with the Debtors.

**III. Issues**

Section 507(b) provides a creditor with a superpriority claim if the following requirements are met: (1) adequate protection was provided previously and has proved inadequate; (2) the creditor has a claim allowable under § 507(a)(2) (which in turn requires that the creditor have an administrative expense claim under § 503(b)); and (3) the claim must have arisen from either the automatic stay under § 362, or the use, sale or lease of the collateral under § 363, or the granting of a lien under § 364(d). *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir. 1994).

The Debtors contend that requirements (1) and (2) have not been met and, therefore the only issues are whether Enterprise has allowable administrative expense claims and whether the adequate protection payments made by the September Debtors were inadequate.

4

**IV. Analysis**

    A. <u>Administrative Expense Claims</u>

Section 507(a)(2) grants priority to administrative expenses allowed under § 503(b). Section 503(b)(1) provides that the "actual, necessary costs and expenses of preserving the estate" are entitled to be allowed as administrative expenses. Enterprise cannot establish an administrative expense claim unless it can demonstrate that its claims are (1) actual and necessary costs or expenses of preserving the Debtors' estates and (2) those costs or expenses were incurred post-petition. *See In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984).

    *1. Actual and Necessary Cost*

A trustee's use of a secured creditor's collateral during the case qualifies as an actual and necessary cost of preserving the estate. *See In re J.F.K. Acquisitions Group*, 166 B.R. 207, 212 (Bankr. E.D.N.Y. 1994); *Bonapfel v. Nally Motor Trucks (In re Carpet Ctr. Leasing Co., Inc.)*, 991 F.2d 682, 687 (11th Cir. 1993). Here, the September Debtors' use of the gas stations and its proceeds went to maintain the properties and operate the businesses. The use of Enterprise's collateral was an essential aspect of the September Debtors' efforts to reorganize because they could not continue to operate without use of Enterprise's cash and real property. Enterprise's claim, stemming from the use of its collateral, is an actual and necessary cost of preserving the estate.

    *2. Incurred Post-petition*

To qualify for an administrative expense, the claim must also be based on a post-petition transaction. A claim is based on a post-petition transaction when the debtor-in-possession's actions give rise to legal liability for the associated claim. *In re Mammoth Mart*, 536 F.2d 950, 955 (1st Cir. 1976). For example, "when the debtor-in-possession commits a tort, or accepts services from a third party without paying for them, the debtor-in-possession itself caused legally cognizable injury, and the resulting claims for compensation are entitled to first priority." *Id.*

In this case, the September Debtors negotiated for the continued use of the collateral and became liable for adequate protection payments. To the extent that these payments were inadequate to protect Enterprise, it should be entitled to administrative priority. *See In re California Devices*, 126 B.R. 82 (Bankr. N.D. Cal. 1991) (holding that

post-petition use of a debtor's collateral is sufficient to constitute an administrative claim for insufficient adequate protection).

The Debtors argue, however, that the expense was not incurred post-petition because Enterprise has not provided the Debtors with any further loans since 2003 and 2004, well before the Debtors' September 2010 petitions. In support of this contention, the Debtors rely on *Mary Holder*, 2012 WL 4434362 (Bankr. D. N.J. 2012) which held that a secured creditor who loans money to a debtor pre-petition is not entitled to a superpriority administrative expense claim because no further money was provided by the creditor to the debtor post-petition.

However, the *Mary Holder* decision is contrary to the decisions of many other circuits, including the 11th Circuit which held that a negotiation for continued possession of a secured lender's collateral in return for adequate protection is a post-petition transaction providing new value to the estate. *In re Carpet Ctr. Leasing*, 991 F.2d at 686-87. Moreover, the creditor in *Mary Holder* sought superpriority for the entire amount of its pre-petition secured claim, whereas Enterprise only seeks superpriority claims to the extent its collateral declined in the value, less any adequate protection payments received. Accordingly, this Court finds the *Mary Holder* decision unpersuasive and that Enterprise's claims may be properly based on post-petition transactions with these estates.

### B. Inadequate Adequate Protection

To determine whether adequate protection provided by the September Debtors was inadequate and to determine the amount of a superpriority administrative expense claim, the following values must be considered: (1) the value of Enterprise's collateral at the Petition Date of these cases, (2) the value of the collateral now; and (3) the total amount of adequate protection payments made. If the value of Enterprise's collateral declined by an amount greater than the amount of adequate protection payments it received, then Enterprise is entitled to a superpriority administrative expense claim in the amount of the decline in value of its collateral, less any adequate protection payments

received. *In re J.F.K. Acquisitions Group*, 166 B.R. at 212; *In re California Devices, Inc.*, 126 B.R. at 85-86.[1]

Enterprise and the Debtors agree that the current values of Enterprise's collateral are set forth in the Confirmation Decision. However, the parties disagree over the total amount of adequate protection payments made and whether or how the March 2011 appraisals relate to valuations of Enterprise's collateral at the Petition Date.

*1. Total amount of adequate protection payments made*

It is undisputed that the parties agreed that the September Debtors would make adequate protection payments to Enterprise in return for the continued use and possession of Enterprise's collateral. It is also undisputed that the September Debtors made adequate protection payments to Enterprise in the following amounts: the Deer Valley Property - $40,656.98; the Signal Butte Property - $37,106.20; the Guadalupe Property - $41,177.22; and the Broadway Property - $38,562.02. However, the Debtors also contend that $23,635.99 in fees paid to the court-appointed examiner should qualify as additional adequate protection to Enterprise.

A debtor has the burden of establishing that it provided adequate protection to a creditor. *See In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 376, 386 (Bankr. E.D. Pa.), *aff'd*, 75 B.R. 819 (E.D. Pa. 1987). "The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy." *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987). Whether value has been provided to a creditor so as to constitute adequate protection is a factual question that "is to be decided flexibly on the proverbial 'case-by-case' basis." *Id*. at 1396-97 (citing *In re Martin,* 761 F.2d 472 (8th Cir. 1985); *In re Monroe Park,* 17 B.R. 934 (D.C. Del. 1982)).

---

[1] This Court recognizes some courts find that a creditor who has stipulated to adequate protection payments is only entitled to a § 507(b) superpriority claim for unforeseeable decreases in the value of their collateral. *See, e.g., In re Callister*, 15 B.R. 521, 530 (Bankr. D. Utah 1981). These courts reason that the creditor should have better predicted the amount of foreseeable decreases in the value of its collateral, such as depreciation, when it agreed to the amount of adequate protection payments. *See id.* at 533. However, this Court finds that the *Callister* interpretation encourages creditors to not stipulate or agree to the amount of adequate protection payments and to not cooperate with the bankruptcy process. *See In re California Devices*, 126 B.R. at 85-86 (holding that "[t]he *Callister* approach discourages the secured creditor from cooperating in the reorganization process"). Accordingly, this Court finds that, although Enterprise agreed to the adequate protection payment amounts, it will be entitled to a superpriority claim attributable to *any* decrease in value of its collateral and such claims will not be limited to only unforeseeable losses.

7

The Debtors argue that Enterprise received value of $26,635.99 paid to the examiner because Enterprise should be solely liable for the examiner's fees. In other words, the Debtors contend their payments to the examiner should be treated as made directly to Enterprise. However, the Court already dismissed the argument that the secured creditors should be solely liable for the examiner's fees when it denied the Debtors' Motion to Surcharge on March 18, 2013 (Dkt. #1492). Because Enterprise and other secured creditors are not solely liable for the examiner's fees, Enterprise did not receive value when the September Debtors made payments to the examiner. Payments made by the September Debtors to the examiner should not serve as additional adequate protection to Enterprise.

### 2. *Initial value of the properties*

The Debtors argue that a valuation of the gas stations as of the Petition Date must be provided to determine whether the properties have decreased in value. Enterprise, on the other hand, contends that the March 2011 appraisals are sufficient representations of the value of the gas stations on the Petition Date, even though those appraisals were six months after the Petition Date.

The starting point to value collateral under § 507(b) is the Petition Date. *See In re Weinstein*, 227 B.R. 284, 296 (9th Cir. B.A.P. 1988) ("Adequate protection is provided to safeguard the creditor against depreciation in the value of its collateral during the reorganization process"). In this case, the September Debtors filed bankruptcy in September 2010. Accordingly, the gas stations should be initially valued as of September 2010 to determine whether Enterprise's collateral declined in value.

However, this Court has not been supplied with collateral appraisals from September 2010. While Enterprise relies on the March 2011 appraisals to support its contention that its collateral decreased in value, the Court finds that the March 2011 appraisals, taken almost six months after the Petition Date, are inaccurate representations of the value of the collateral as of September 2010. The only evidence of the collateral values as of September 2010 is contained in the September Debtors' schedules. Those listed values are considerably lower than the values established by the Confirmation Decision. Enterprise has, therefore, not proven its collateral has declined in value since September 2010.

### V. Conclusion

Enterprise has not established that its collateral declined in value between the Petition Date and the date of the Confirmation Decision because no September 2010 appraisals were submitted to the Court and the values identified in the September Debtors' schedules suggest that Enterprise's collateral has increased in value since the Petition Date. Enterprise's Superpriority Application is denied without prejudice. If valuations of Enterprise's collateral as of September 2010 are submitted, the Court will review those valuations and then make a determination as to whether the adequate protection payments made by the September Debtors were insufficient to cover any post-petition diminution in the value of Enterprise's collateral so as to entitle Enterprise to a superpriority administrative expense claim.

**So ordered.**

Dated: May 2, 2013

_____
DANIEL P. COLLINS
UNITED STATES BANKRUPTCY JUDGE

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to:

All interested parties